UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

J & J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the February
21, 2009, Pavlik/Rubio-Cotto/Jennings          REPORT AND
Broadcast,                                     RECOMMENDATION

                          Plaintiff,           CV 2009-3745 (FB)(MDG)


               - against -

JOSE A. BERNAL, Individually and as
officer, director, shareholder,
and/or principal of EL SONADOR CAFÉ
RESTAURANT INC., d/b/a EL SONADOR
CAFÉ RESTAURANT, a/k/a 30-30 CAFÉ
RESTAURANT, and EL SONADOR CAFÉ
RESTAURANT INC., d/b/a EL SONADOR
CAFÉ RESTAURANT, a/k/a 30-30 CAFÉ
RESTAURANT,

                          Defendants.

- - - - - - - - - - - - - - - - - - X


Go, United States Magistrate Judge:

     Plaintiff J & J Sports Productions, Inc. ("plaintiff")

brings this action under Title 47 of the United States Code

alleging that defendants Jose A. Bernal ("Bernal") and El Sonador

Café Restaurant, Inc. (collectively referred to as "defendants")

violated sections 553 and 605 by intercepting and displaying to

their customers, without plaintiff's authorization, a pay-per-

view cable television broadcast.

     After entry of default following defendants' failure to

appear or otherwise defend in this action (ct. doc. 6), the

Honorable Frederic Block granted plaintiff's motion for entry of default judgment to me to report and recommend on the issue of damages.  <u>See</u> ct. doc. 7.

<u>PERTINENT FACTS</u>

The facts pertinent to determination of this motion are undisputed and are set forth in the Complaint ("Compl.") (ct. doc. 1); the October 19, 2009 affidavit of Joseph Gagliardi, President of plaintiff ("Gagliardi Aff.") (ct. doc. 5-1); the October 22, 2009 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 5-2); the February 24, 2009 affidavit of investigator Cosmo Lubrano ("Cosmo Aff.") (attached as Exhibit C to the Gagliardi Aff.).  Defendants did not file any opposing papers.

Plaintiff is a corporation organized under the laws of the State of California, with its principal place of business located in Campbell, California.  Compl. at ¶ 5.  El Sonador Café Restaurant, Inc., d/b/a El Sonador Café Restaurant, a/k/a 30-30 Café Restaurant is a business entity located at 93-14 Corona Avenue, Corona, New York.  <u>Id.</u> at ¶ 10.  Defendant Bernal resides in the State of New York.  <u>Id.</u> at ¶ 6.

Plaintiff owns the rights to distribute via closed-circuit television and encrypted satellite signal the broadcast of the Pavlik/Rubio-Cotto/Jennings boxing match scheduled for February 21, 2009 (the "program").  <u>Id.</u> at ¶ 15; Gagliardi Aff. at ¶ 3.  Plaintiff entered into sub-license agreements with various

-2-

entities to show the program to patrons in a broadcast which originated as a satellite uplink and was re-transmitted by plaintiff to cable and satellite providers via a satellite signal. <u>See</u> Compl. at ¶¶ 15-16; Gagliardi Aff. at ¶ 3.

Defendants did not enter into any contract with plaintiff and thus were not authorized to receive and publish the program. Gagliardi Aff. at ¶ 6. As set forth in his affidavit, investigator Cosmo Lubrano observed the unauthorized public showing of the program at 30-30 Café Bar to 10 customers. Lubrano Aff. at 2. Entering the establishment at approximately 11:41 p.m. on February 21, 2009, investigator Lubrano observed, <u>inter</u> <u>alia</u>, the boxing match between Pavlik and Rubio. <u>Id.</u> at 1.

After commencement of this action and entry of default against both defendants, Judge Block granted plaintiff's motion for default judgment and referred it to me for determination of damages. Ct. doc. 7.

<u>DISCUSSION</u>

I. <u>Legal Standards Governing Default</u>

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is,

the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.  Greyhound, 973 F.2d at 159.  The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded."  Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment.  Actual damages or statutory damages may be assessed.  In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.  Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).  The moving party is entitled to all reasonable inferences from the evidence it offers.  Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II.  Determination of Damages

    A.  Liability

    Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming.  Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over

a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication . . . or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or the benefit of another not entitled thereto." When television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir. 1996) ("Sykes II") (noting that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions); see also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).

Plaintiff establishes in its submissions that it had the right to distribute the program, which originated via satellite uplink, and that the program was displayed in violation of sections 553 and 605 of Title 47. Compl. at ¶¶ 15-19; Lubrano Aff. at 1-2; Gagliardi Aff. at ¶¶ 3, 6, 8. Investigator Lubrano observed the program being displayed at 30-30 Café Restaurant, a business alleged to be operated by defendants, even though defendants had not contracted with plaintiff to do so. Lubrano Aff. at 1-2. Consequently, this Court finds that there was unlicensed reception and exhibition of the transmissions at 30-30 Café Restaurant in violation of sections 553 and 605 of Title 47.

However, the liability of defendant Jose A. Bernal, the individual defendant, involves different and additional considerations from the liability of the corporate defendant El Sonador Café Restaurant, Inc. A party may be vicariously liable for infringement if he has "the right and ability to supervise" the infringing activities and had "an obvious and direct financial interest in the exploitation of [the] copyrighted materials" or contributorily liable if he "authorized" the infringing conduct. See Softel, Inc. v. Dragon Med. & Sci. Comm., Inc., 118 F.3d 955, 971 (2d Cir. 1997); Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963). Plaintiff alleges in the complaint that Jose A. Bernal is the principal of El Sonador Café Restaurant, Inc., has supervisory control over its activities and received a financial benefit from its operations on February 21, 2009. Compl. at ¶¶ 8-9. These allegations, even though alleged upon information and belief, are deemed admitted. See Fong v. United States, 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge); 71 C.J.S. Pleading § 82. In addition, the defendant Bernal is named as the principal of 30-30 Café Restaurant in the records of the New York State Division of

Alcoholic Beverage Control Liquor Authority.[1]  See

http://www.abc.state.ny.us/.  Thus, I recommend that the

individual defendant Jose A. Bernal and the corporate defendant

El Sonador Café Restaurant, Inc. be held jointly and severally

liable for violating Title 47.

    B.  Damages

    Plaintiff requests damages pursuant to section 605, rather

than section 553.  Pl.'s Mem. at 9.  Where a defendant is liable

under both sections 553 and 605, the plaintiff is entitled to

have damages awarded under section 605 because it provides

greater recovery than does section 553.  See Sykes II, 75 F.3d at

127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs.,

Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21,

2002) (recovery under both sections 553 and 605 is

impermissible).

    Section 605 allows plaintiff to elect to recover either

actual damages and lost profits or statutory damages.  See 47

U.S.C. § 605(e)(3)(C)(I).  Section 605(e)(3)(C)(i)(II) authorizes

statutory damages of no less than $1,000 and no more than $10,000

---

    [1] The Court can take judicial notice of this public filing
by the New York State Division of Alcoholic Beverage Control
State Liquor Authority.  See Kramer v. Time Warner, Inc., 937
F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents
of corporate filings with SEC); Banks v. Consumer Home Mortgage,
No. 01-CV-8058, 2003 WL 21251584, at *6 n.7 (E.D.N.Y. Mar. 28,
2003) (taking judicial notice of public record on file with
Secretary of State for Georgia); McMichael v. U.S. Filter Corp.,
No. 99-182, 2001 WL 418981, at *8 (E.D. Ca. Feb. 23, 2001)
(taking judicial notice of certificate of incorporation in
Delaware).

for each violation of section 605(a).  That section vests the
court with the discretion to determine the amount of statutory
damages, authorizing the court to award an amount "as the court
considers just."  See Home Box Office v. Champs of New Haven,
Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand
Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y.
1998) (the court has "discretion to adjust the amount awarded to
the plaintiff").  In addition, section 605(e)(3)(C)(ii) vests the
court with the discretion to increase the award of damages where
"the court finds that the violation was committed willfully and
for the purposes of direct or indirect commercial advantage or
private financial gain."  The court is authorized to award
enhanced damages of up to $100,000 for each willful violation.

    In exercising such discretion, courts should be mindful of
the difficulty in detecting such violations and the widespread
problem of piracy.  See Cablevision Sys. New York City Corp. v.
Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb.
7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative
history).  The court should therefore grant damages in an amount
which achieves the deterrent purposes of the statute.  See
Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp.
107, 113 (E.D.N.Y. 1997).

    Plaintiff seeks to recover the maximum statutory damages
allowed in the amount of $10,000 and enhanced damages up to
$25,000 for each defendant's willful violation of section 605.

Pl.'s Mem. at 10. Some courts have simply assessed a flat damages amount per violation. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for a one-time boxing match exhibited to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for a one-time boxing match exhibited to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000 statutory damages for a one-time boxing match exhibited to 30 customers).

When presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming, other courts have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question. See, e.g., Mama Zee, 2002 WL 2022522, at *3 (awarding $50 per patron), Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same). A number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cazares, No. CV-05-

2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July 25, 2006)
(adopting recommendation of statutory damages award based on
$54.95 residential rate for each patron present during broadcast
of event); Garden City Boxing Club, Inc. v. Rosado, No. CV-05-
1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005)
(recommending statutory damages award of $989.10 based on $54.95
for each of the 18 patrons observed in the establishment); Garden
City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062,
at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages
based on $54.95 residential rate for each of the 40 patrons who
could have viewed the prize fight based on the establishment's
capacity).  Courts using the residential fee reason that this is
the amount each patron would have paid to view the boxing match
from home had he or she not had access to a broadcast at the
establishment at issue.  See Bello, 2005 WL 2496062, at *3.

Plaintiff has submitted evidence that 10 customers were
present at 30-30 Café Restaurant when investigator Lubrano
observed the program being illegally displayed.  Lubrano Aff. at
2.  I respectfully recommend that damages be awarded at the
statutory minimum amount of $1,000 because the patron-based
formula amount does not meet the statutory minimum.[2]

Further, I recommend that the Court grant plaintiff's

_____

[2] Under the patron-based formula, statutory damages would
only amount to $549.50, based on 10 customers multiplied by the
residential rate of $54.95.  However, section 605 authorizes
statutory damages of no less than $1,000.  See 47 U.S.C.
§ 605(e)(3)(C)(i)(II).

request for enhanced damages against defendants.  Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage.  Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)).  Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct.  See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992).  A defendant's default may also be considered as evidence of willful infringement.  See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages.  These factors include:  "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums

for food and drinks." <u>Kingvision Pay-Per-View, Ltd. v. Recio</u>,
No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11,
2003) (internal citations omitted).

The undisputed facts presented by plaintiff in its complaint
and the supporting affidavits clearly establish that 30-30 Café
Restaurant is a commercial establishment that publicly displayed
the program to customers without authorization.  Plaintiff's
submissions and the defendant's default suffice to support the
inference that on February 21, 2009 30-30 Café displayed the
boxing match for commercial gain in order to attract customers to
patronize its establishment.  Thus, I find that the defendants
willfully acted to intercept the match without authorization.

Various courts in this circuit have awarded enhanced damages
equal to three times the amount of damages awarded under section
605(3)(3)(C)(I), particularly in cases involving small commercial
establishments.  <u>See Joe Hand Promotions, Inc. v. El Norteno
Restaurant Corp.</u>, No. 06 CV 1878, 2007 WL 2891016, at *5
(E.D.N.Y. Sept. 28, 2007); <u>Kingvision Pay-Per-View, Ltd. v.
Echeverria</u>, No. 06 CV 1266, 2007 WL 595025, at *4 (E.D.N.Y. Feb.
22, 2007); <u>Joe Hand Promotions, Inc. v. West</u>, No. CIV.A.99-
0983E(M), 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where
no special circumstances are shown, a trebling of damages is a
"reasonable deterrent against future violations") (quoting
<u>Googies Luncheonette</u>, 77 F. Supp. 2d at 490-91).  Accordingly, I
recommend awarding enhanced damages of $3,000.

C. <u>Attorneys' Fees and Costs</u>

Plaintiff seeks to recover its attorneys' fees and costs totaling $1,745.95.[3]  Lonstein Aff. at ¶ 5.  Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party.  <u>Int'l Cablevision, Inc. v. Sykes</u>, 997 F.2d 998, 1009 (2d Cir. 1993) ("<u>Sykes I</u>").  The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59 (2d Cir. 1989); <u>see also</u> <u>Perdue v. Kenny A.</u>, 130 S.Ct. 1662, 1672-73 (2010) (discussing lodestar methodology).  In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133 (2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of time was unreasonable, the court should exclude these hours from the

---

[3] In the Wherefore clause of Ms. Lonstein's affidavit and the conclusion of her memorandum of law, she requests attorneys' fees and costs in the amount of $872.97.  However, paragraph 5 of her affidavit and the exhibits attached thereto reflect fees and expenses in the amount of $1,745.95.

calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at
133.  The court should thus exclude "excessive, redundant or
otherwise unnecessary hours, as well as hours dedicated to
severable unsuccessful claims."  Quaratino v. Tiffany & Co., 166
F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees
bears the burden of supporting its claim of hours expended by
accurate, detailed and contemporaneous time records.  N.Y. State
Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-
48 (2d Cir. 1983).

A reasonable hourly rate is "the rate a paying client would
be willing to pay," "bear[ing] in mind that a reasonable paying
client wishes to spend the minimum necessary to litigate the case
effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly
rates are determined by examining the "rates prevailing in the
community for similar services of lawyers of reasonably
comparable skill, experience, and reputation."  Cruz v. Local
Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing
Blum v. Stenson, 465 U.S. 886, 894 (1984)).  Determination of the
prevailing market rates may be based on evidence presented or a
judge's own knowledge of hourly rates charged in the community.
Chambless, 885 F.2d at 1059.  The "community" is generally
considered the district where the district court sits.  See Arbor
Hill, 522 F.3d at 190-91.

Plaintiff seeks to recover $1,065.00 in attorneys' fees.
Lonstein Aff. at ¶ 5.  In support of that request, plaintiff has

submitted an affidavit from Julie Cohen Lonstein detailing the work done, hours expended, and the total amount due. <u>Id.</u> Ms. Lonstein states that attorney work totaled 4.5 hours at a rate of $200 per hour, totaling $900, and 2.2 hours of paralegal time was expended at a rate of $75 per hour, totaling $1,065.00. <u>Id.</u> Although the rate sought by plaintiff for attorney time may be reasonable, plaintiff fails to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys. If the work was performed by an associate with only a few years of experience, then I would find the $200 per hour rate unreasonable based on my knowledge of prevailing rates for comparable matters in this district. <u>See LaBarbera v. ESL Home Remodeling Inc.</u>, No. 06-CV-1372, 2007 WL 708359, at *6 (E.D.N.Y. Feb. 28. 2007) (reducing associate's rate to $150 per hour); <u>King v. STL Consulting, LLC</u>, No. 05 CV 2719, 2006 WL 3335115, at *7-*8 (E.D.N.Y. Oct. 3, 2006) (awarding $100 per hour for associate admitted in 2005); <u>see also Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d at 491. On the other hand, the rate of $75 per hour for the paralegal's time is reasonable. <u>See Jacobson v. Peterbilt Elec. Contracting Inc.</u>, CV-03-31413, 2008 WL 1744544, at *4 (E.D.N.Y. Apr. 11, 2008) (awarding $80 per hour for paralegal); <u>Finkel v. Tech Man</u>, No. 06-CV-2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007) (awarding $75 per hour for paralegal).

I find that the amount of time expended on this case is not

excessive.  However, given the insufficient information submitted to support the rates claimed, I recommend that plaintiff be awarded fees for its attorneys' time at the reduced rate of $175 per hour and for its paralegals' time at a rate of $75 per hour, for a total fee award of $952.50.

Plaintiff also seeks to recover its costs totaling $680.95. Lonstein Aff. at ¶ 5.  In support of that request, Ms. Lonstein attests to the payment of $350 for filing fees and $330.95 for service of process fees.  Lonstein Aff. at ¶ 5, Exh. A. Plaintiff's request for filing fees and service of process fees is reasonable.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that this Court award plaintiff judgment against defendants Jose A. Bernal and El Sonador Café Restaurant, Inc. in the amount of $1,000 in damages, $3,000 in enhanced damages, $952.50 in attorneys fees, and $680.95 in costs, for a total judgment of $5,633.45.

This report and recommendation will be filed electronically and a copy sent by overnight delivery to the defendants on this date.  Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Frederick Block and the other party, on or before August 16, 2010.  Failure to file timely objections may waive the right to appeal the District Court's Order.  <u>See</u> 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**SO ORDERED.**

Dated:     Brooklyn, New York
           July 28, 2010

                                    _____/s/_____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE

Copies sent to:

Jose A. Bernal
3426 85th Street
Jackson Heights, NY 11372

El Sonador Café Restaurant, Inc.
93-14 Corona Avenue
Elmhurst, NY 11373